UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| DANIEL EDWARD CVIJANOVICH, | Case No. 3:18-cv-220 |
| Plaintiff, | **UNITED STATES SECRET SERVICE'S MEMORANDUM IN SUPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES SECRET SERVICE, | |
| Defendant. | |

The United States of America by Drew H. Wrigley, United States Attorney for the District of North Dakota, and James Patrick Thomas, Assistant United States Attorney, on behalf of the United States Secret Service (the "Secret Service"), submits this memorandum in support of its Motion for Summary Judgment.

## INTRODUCTION

In this Freedom of Information Act ("FOIA") suit, Plaintiff Daniel Edward Cvijanovich ("Plaintiff") seeks all records in the Secret Service's possession pertaining to Plaintiff. For many years, Plaintiff has been the subject of an open protective intelligence investigation by the Secret Service, wherein the Secret Service is actively investigating Plaintiff as a security risk to Secret Service protectees, protected facilities, or protected events.

As set forth in detail herein and in the Secret Service's declarations in support of this Motion, the Secret Service has conducted reasonable searches for, and located, the documents Plaintiff seeks. The Secret Service carefully reviewed the responsive documents and determined it could produce a portion to Plaintiff with appropriate redactions. The Secret Service released these documents to Plaintiff on May 2, 2019.[1] The Secret Service further determined that

---

[1] The Secret Service has since further reviewed and corrected a limited number of its redactions on the documents released to Plaintiff. In most instances, the Secret Service revised annotations identifying the FOIA exemptions it claimed, but without changing the substance of the redaction

5 U.S.C. § 552(b)(7)(A) applies to exempt the remaining documents in their entirety, because disclosure of those records would interfere with the Secret Service's open protective intelligence investigation of Plaintiff. Further, and in the alternative, numerous other FOIA exemptions apply to portions of those withheld documents and would require extensive redaction of the documents if released. Accordingly, the Court should find that the Secret Service has complied with its obligations under FOIA, 5 U.S.C. § 552, and grant the Secret Service's Motion for Summary Judgment in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      The United States Secret Service.

The Secret Service, a component of the Department of Homeland Security, is a federal protective and law enforcement agency operating under the provisions of Title 18 of the United States Code, Section 3056. (Callahan Decl. ¶ 29). The Secret Service is authorized to protect, among others, the President and Vice President of the United States, a President-elect and Vice President-elect, the immediate families of those individuals, former Presidents of the United States, major Presidential and Vice Presidential candidates, and foreign heads of state visiting the United States (collectively "protectees"). (Callahan Decl. ¶ 29).

---

itself. In many instances the Secret Service is redacting less text than it did in the first set of documents released May 2, 2019. A set of the updated redacted documents, with added Bates prefix "Rev", is attached as Exhibit 11 to the Declaration of William J. Callahan, Deputy Director, United States Secret Service ("Callahan Decl."). Exhibit 11 is filed under seal (see Doc. 20) to protect Plaintiff's own personally identifiable information and information about Plaintiff which Plaintiff might argue should be protected under the Privacy Act of 1974, or other law. As Plaintiff is a pro se party without access to the ECF system, the undersigned will send him a paper copy of Exhibit 11, along with paper copies of the publicly filed documents accompanying the Secret Service's motion for summary judgment. Pursuant to Federal Rule of Civil Procedure 5.2(d), the Secret Service recognizes that "The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record." Presumably Plaintiff could also explicitly, or implicitly by his conduct, waive any potential privacy interest he might hold with respect to his own information.

## II.    Plaintiff Daniel Edward Cvijanovich.

Plaintiff's threats against Secret Service protectees, and his related criminal history, have raised concerns within the Secret Service for well over a decade.  (Callahan Decl. ¶ 47).  Plaintiff first came to the attention of the Secret Service in March 2006, when an anonymous posting on the FBI's website claimed Plaintiff wanted to assassinate then-President George W. Bush during a February 2005 visit to Fargo, North Dakota.  (Callahan Decl. ¶ 47).  According to the posting, Plaintiff took a firearm to the event, but was unable to get close enough to the President to shoot him.  (Callahan Decl. ¶ 47).  Additionally, the posting alleged Plaintiff was involved in vandalizing a post office in 2001.  (Callahan Decl. ¶ 47).

With respect to the alleged post office vandalism, in 2006 a federal grand jury in the District of North Dakota indicted Plaintiff with three counts of Damage to Government Property, 18 U.S.C. § 1361; three counts of Threatening to Assault a Federal Official, 18 U.S.C. § 115(a)(1)(B); and two counts of Mailing Threatening Communications, 18 U.S.C. § 876(c). (Doc. 3:06-cr-00044 9).  In pleading guilty to the three charges of Damage to Government Property and one count of Mailing Threatening Communications, Plaintiff acknowledged the following:

> As alleged in Counts 1, 2 and 3 of the Indictment, on three separate occasions, specifically on or about June 5, June 7, and July 11, 2001, defendant entered the public lobby of the United States Federal Building at 657 2nd Avenue North, Fargo, North Dakota, and on each occasion threw a rock through a pane of glass which separates the public lobby from the secure portion of the building which houses, among other things, the local office of the Federal Bureau of Investigation.  Attached to each rock was a note addressed to the FBI.  The note attached to the July 11 rock, as alleged in Count 6, was intended by the defendant to be perceived as threats against agents of the FBI officed in that building, and the message was reasonably perceived by the FBI special agents as threats directed against them in retaliation for the investigation of Leonard Peltier conducted by the FBI.  Among the threatening statements contained in the July 11 message were the following:

"Perhaps you do not wish to consider an opinion expressed through the destruction of property.  Should I purchase you [sic] attention instead with blood?"

"Is a spiteful, illegally executed grudge worth all this shit?  Think about that when you start attending the funerals of your own agents."

"Even if I never become violent, I'm wasting your time and creating stress.  Do you want to hire someone to watch the federal building full time?  Do you want hundreds of people crowding around holding their breath as they wait to discover whether a bomb threat is just a threat?"

(Doc. 3:06-cr-00044 16 p. 2-3).[2]  On October 25, 2006, the District Court sentenced Plaintiff to a

term of imprisonment of twelve months, followed by thirty-six months of supervised release, and

required him to pay $460.98 in restitution to the United States General Services Administration.

(Doc. 3:06-cr-00044 24).

Shortly thereafter, in June 2007, a federal grand jury indicted Plaintiff on three counts of

Threats Against the President, 18 U.S.C. § 871.  (Doc. 3:07-cr-00055 6).  Specifically, Count

One of the Indictment charged that while Plaintiff was an inmate at Stutsman County Jail, in or

about November 2006:

he stated his intention to kill the President to a fellow inmate, Kyle White, indicating, "All I want to do is kill the President and will not stop until the President is dead.  I will continue to try to kill President Bush if he is still the President when I get out of jail.  I will travel to any location in my next attempt to kill the President.  I know people who can provide me with another gun.  I will try to shoot the President in the forehead.  I want to kill the President so I will be famous."

---

[2] "At the time the plea agreement was executed, the government knew about certain threats that Cvijanovich allegedly made against President George W. Bush during the President's visit to Fargo on February 2 and 3, 2005.  Specifically, the government had information that Cvijanovich was in the parking lot of the venue where the president was speaking, that he was armed with a gun, and that he was considering an assassination attempt.  The government agreed not to prosecute Cvijanovich for conduct related to that incident unless it was discovered that the defendant's threatening conduct 'materially exceed[ed]' what the government knew on May 26, 2006."  United States v. Cvijanovich, 556 F.3d 857, 859 (8th Cir. 2009).

4

(Doc. 3:07-cr-00055 6 p. 1-2).

On October 17, 2007, a jury convicted Plaintiff on Count One of the Indictment. The District Court sentenced Plaintiff to a term of imprisonment of nineteen months, followed by thirty-six months of supervised release. (Doc. 3:07-cr-00055 86). Plaintiff appealed to the Eighth Circuit Court of Appeals, which affirmed the conviction. (Doc. 3:07-cr-00055 120). Plaintiff then moved for a new trial, attacking the credibility of a key prosecution witness, Kyle White ("White"). (Doc. 3:07-cr-00055 121). In his motion Plaintiff claimed White had written a letter to the Court in his own criminal case, wherein White stated he did not use drugs. (Doc. 3:07-cr-00055 21). Plaintiff claimed this representation was known to be false. (Doc. 3:07-cr-00055 121). The Court denied Plaintiff's motion. (Doc. 3:07-cr-00055 124).

Plaintiff then moved under 28 U.S.C. § 2255 to vacate his conviction. (Doc. 3:07-cr-00055 149). As summarized by the Court, Plaintiff argued "the United States failed to disclose a letter from its witness [White] wherein White obstructed justice by attempting to suborn perjured testimony in his own criminal case," and further, that "the United States failed to disclose an obstruction of justice sentencing enhancement White received based on the suborning letter." (Doc. 3:07-cr-00055 176 p. 1). The Court found that while the Assistant United States Attorney ("AUSA") prosecuting Plaintiff did not know about the White letter or White's sentencing enhancement, a different AUSA—the AUSA prosecuting White—knew about both. (Doc. 3:07-cr-00055 176 pp. 7-8). The Court imputed the knowledge of the AUSA prosecuting White to the AUSA prosecuting Plaintiff, and held the United States committed a Brady/Giglio violation by failing to disclose the White letter and sentencing enhancement to Plaintiff. (Doc. 3:07-cr-00055 176 p. 7-18). The Court vacated Plaintiff's conviction and ordered a new trial. (Doc. 3:07-cr-00055 176 p. 19). The United States moved to dismiss the indictment, in part because Plaintiff

had already served his entire sentence in the matter.  (Doc. 3:07-cr-00055 186 ¶ 9).  The Court granted the motion and dismissed the indictment.  (Doc. 3:07-cr-00055 187).

Due to Plaintiff's previous criminal activity and threats against the President, mental evaluations, and other information gathered throughout its investigation, the Secret Service continues to be concerned that Plaintiff poses a serious risk to its protectees.  The Secret Service continues to assess Plaintiff's life circumstances and behavior to ensure Plaintiff does not harm one of its protectees.  (Callahan Decl. ¶ 66).  These concerns and the related open protective intelligence investigation are described in more detail in Ex Parte, for In Camera Review, Declaration of William J. Callahan, Deputy Director, United States Secret Service ("Ex Parte Decl."), at ¶¶ 37-43; 45-46; 48; 50-51; 54-57; 64; 67-75; 77-78, filed pursuant to Doc. 20.

### III.    The Secret Service's Search for Responsive Documents.

In a letter to the Secret Service dated December 1, 2017, Plaintiff requested "copies of all records pertaining to myself which are in the possession of the United States Secret Service." (Doc. 1-2).

After receiving Plaintiff's request, the Secret Service Freedom of Information Act/Privacy Act ("FOIA/PA") office determined that, based on the subject matter of the request, and to conduct as wide a search as was reasonably possible, it needed to search the Field Investigative Reporting System ("FIRS") to ascertain if the Secret Service had potentially responsive records.  (Callahan Decl. ¶ 7).

FIRS is the Secret Service's central index for records related to new or existing cases and investigations of crimes that fall within the Secret Service's jurisdiction.  (Callahan Decl. ¶ 8). FIRS directs the searcher to the system or location where records related to a particular criminal investigation or case are stored.  (Callahan Decl. ¶ 8).  FIRS does not, itself, contain any of those

records.  (Callahan Decl. ¶ 8).

On December 18, 2017 FOIA/PA office personnel conducted an electronic search in FIRS by using the keyword search term:  Daniel Cvijanovich.  (Callahan Decl. ¶ 9).  The search returned a result for records relating to Plaintiff in the Protective Threat Management System ("PTMS") and the Significant Case Database ("IBR").  (Callahan Decl. ¶ 9).

PTMS is a system for records related to individual actors' threatening behavior or incidents that may impact the Secret Service's mission to protect persons, events, and facilities pursuant to title 18 U.S.C. §§ 3056(a) and 3056A.  (Callahan Decl. ¶ 10).  PTMS is maintained by the Secret Service's Protective Intelligence and Assessment Division ("PID") and is the Secret Service's protective intelligence database.  (Callahan Decl. ¶ 10).

IBR is a Secret Service application that allows users to search for, create, and modify criminal investigative files.  (Callahan Decl. ¶ 11).  IBR is maintained by the Secret Service Criminal Investigative Division ("CID").  (Callahan Decl. ¶ 11).

Based on the positive result for records in PTMS, the FOIA/PA office contacted PID to search PTMS.  (Callahan Decl. ¶ 12).  PID personnel searched the PTMS using the search term: Cvijanovich.  (Callahan Decl. ¶ 12).  The search indicated that PID had records relating to Plaintiff's request, but they related to an open protective intelligence investigation.  (Callahan Decl. ¶ 12).  PID responded to the FOIA/PA office, advising that its search produced responsive records, but that the records pertained to an open protective intelligence investigation.  (Callahan Decl. ¶ 13).

Based on the positive result for records in IBR, the FOIA/PA office contacted CID to search IBR.  (Callahan Decl. ¶ 14).  CID personnel responded to the FOIA/PA office that the IBR system produces duplicate documents of what was already located in PTMS.  (Callahan

Decl. ¶ 14).

After receiving PID's response to the search request, the FOIA/PA office determined the Secret Service had records responsive to Plaintiff's request, but that they were exempt from disclosure under 5 U.S.C. § 552(b)(7)(A) because disclosure could reasonably be expected to interfere with law enforcement proceedings.  (Callahan Decl. ¶ 15).

### IV.    The Secret Service's Response to Plaintiff's FOIA Request.

The Secret Service responded to Plaintiff's request on April 9, 2018, informing him his file with the Secret Service was exempt from production under FOIA pursuant to 5 U.S.C. § 552(b)(7)(A).  (Doc. 1-3).  The Secret Service further stated, "[t]he citation of the above exemption is not to be construed as the only exemption which may be available under the FOIA."  (Doc. 1-3).

Plaintiff administratively appealed the Secret Service decision in a letter dated June 2, 2018.  (Doc. 1-4).  In his appeal, Plaintiff stated his belief that there was no pending enforcement proceeding against him, and therefore Exemption (b)(7)(A) does not apply:

> There are allegations that I threatened and/or attempted to murder President Bush in February of 2005.  No charges were ever brought.  The statute of limitations for a threat charge is 5 years, so that expired in February of 2010.  The statute of limitations for an attempt charge is 8 years, so that expired in February of 2013.
>
> There is no pending enforcement proceeding against me.  This exemption does not apply, and I am entitled to see my records.

(Doc. 1-4).

The Secret Service responded to Plaintiff's administrative appeal in a letter dated July 31, 2018.  (Doc. 1-5).  The letter stated "[i]n the appeal review, it has been determined that the responsive documents should continue to be withheld under 5 U.S.C. § 552(b)(7)(A) as release of this information could interfere with an ongoing enforcement proceeding.  Therefore, your

appeal is denied."  (Doc. 1-5).

Plaintiff sought judicial review in this Court on October 30, 2018.  (Doc. 1).

## V.    The Secret Service's Production of Responsive, Non-Exempt Records.

After the filing of this litigation, the Secret Service again reviewed the responsive

documents and determined that records created prior to Plaintiff's conviction on October 17,

2007 ("pre-conviction records") could be released to Plaintiff with appropriate redactions.

(Callahan Decl. ¶ 19).  The Secret Service made redactions on the basis of the FOIA exemptions

contained in 5 U.S.C. §§ 552(b)(3) (grand jury information); (b)(5) (attorney-client privilege,

attorney work-product, and deliberative process); (b)(6) (personnel, medical, and similar files);

(b)(7)(C) (invasion of personal privacy); (b)(7)(D) (identity of confidential sources); (b)(7)(E)

(disclosure of sensitive law enforcement techniques, procedures, or guidelines); and (b)(7)(F)

(endangering the life or physical safety of any individual).[3]  (Callahan Decl. ¶ 22).  In addition,

the Secret Service created a Vaughn Index[4] outlining the exemptions claimed and why it asserted

---

[3] During its review of the pre-conviction records the Secret Service discovered some of the
responsive records in the Secret Service's file originated from the Federal Bureau of
Investigation ("FBI") and the Federal Bureau of Prisons ("BOP").  (Callahan Decl. ¶ 19).  By
letters dated April 18, 2019 and May 7, 2019 the Secret Service referred records to the FBI and
BOP for review and direct response to Plaintiff.  (Callahan Decl. ¶¶ 20-21).  The Secret Service
also informed Plaintiff that the records were referred to FBI and BOP.  (Callahan Decl. ¶ 22).

[4] "A Vaughn index provides a specific factual description of each document sought by the FOIA
requester.  Specifically, such an index includes a general description of each document's
contents, including information about the document's creation, such as date, time, and place."  In
re DOJ, 999 F.2d 1302, 1306 (8th Cir. 1993) (citation omitted).  Here, the Secret Service does
not concede a Vaughn index is required for each FOIA Exemption Secret Service has claimed,
but it is preparing one nonetheless for the convenience of the Court and Plaintiff.  See Id. at
1306-07 (noting Supreme Court has interpreted FOIA Exemptions (b)(7)(A), (C), and (D) to
permit government to proceed on a categorical basis to justify nondisclosure); see also Fiduccia
v. DOJ, 185 F.3d 1035, 1043 (9th Cir. 1999) (where requestor can determine from context
around redaction what sort of information is withheld, redacted document may be "more useful
to the requestor" and a Vaughn index a "superfluity").

each exemption.  (Callahan Decl. ¶ 23).  The Secret Service is filing the <u>Vaughn</u> Index as Exhibit 10 to the Callahan Declaration.

The Secret Service also carefully reviewed the records created after Plaintiff's conviction on October 17, 2007 ("post-conviction records").  (Callahan Decl. ¶ 80).  As a result of that review, the Secret Service determined the post-conviction records can be sorted into four functional categories of documents: (i) Reports, (ii) Mental Health Information, (iii) Court Documents, and (iv) Open Source Information.  (Callahan Decl. ¶ 80).  The Secret Service performed a document-by-document review to assign documents to the proper categories.  (Callahan Decl. ¶ 81).  After conducting this review, the Secret Service determined the documents in the Court Documents category and some news articles in the Open Source Information category could also be released to Plaintiff without compromising the Secret Service's protective mission.  (Callahan Decl. ¶ 81).

The Secret Service produced the redacted pre-conviction records, and the selected post-conviction records, to Plaintiff on May 2, 2019.  (Callahan Decl. ¶¶ 81).

**VI.    The Secret Service's Withholding of Responsive Records.**

The Secret Service continues to withhold the remaining post-conviction records in the Open Source Information category and all the records within the Reports and Mental Health Information categories pursuant to FOIA Exemption (b)(7)(A), because their release would interfere with ongoing law enforcement proceedings.  (Callahan Decl. ¶¶ 26; 81).  The Secret Service also asserts that numerous other FOIA Exemptions apply to these documents, which would require extensive redactions if the documents were produced.  These Exemptions include 5 U.S.C. §§ 552(b)(3) (grand jury information); (b)(5) (attorney-client privilege, attorney work-product, and deliberative process); (b)(6) (personnel, medical, and similar files); (b)(7)(C)

(invasion of personal privacy); (b)(7)(D) (identity of confidential sources); (b)(7)(E) (disclosure of sensitive law enforcement techniques, procedures, or guidelines); and (b)(7)(F) (endangering the life or physical safety of any individual).  (Callahan Decl. ¶¶ 26; 93).

The Secret Service carefully reviewed the withheld materials and determined no further information can be reasonably segregated and released.  (Callahan Decl. ¶¶ 130-131).

## ARGUMENT

### I.     FOIA and Summary Judgment Standards of Review.

Although the FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'"  August v. FBI, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989)). Accordingly, while "disclosure, not secrecy, is the dominant objective of the Act," and while the Act's exemptions must therefore "be narrowly construed," the exemptions also must be given "meaningful reach and application" in order to achieve the "workable balance" that Congress has struck "between the right of the public to know and the need of the Government to keep information in confidence [.]"  John Doe Agency, 493 U.S. at 152.

"Most FOIA cases are appropriately resolved on motions for summary judgment." Gilliam v. DOJ, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citation omitted).  "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985).  "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that

any reasonably segregable non-exempt parts of records have been disclosed after redaction of

exempt information." Light v. DOJ, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

The Court reviews an agency response to a FOIA request de novo.  5 U.S.C.

§ 552(a)(4)(B).

> A court's primary role . . . is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position . . . .  If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position.  The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

Barney v. IRS, 618 F.2d 1268, 1272 (8th Cir. 1980) (quotation omitted).

## II.     The Secret Service Conducted an Adequate Search for Responsive Records.

In responding to a FOIA request an agency must conduct a reasonable search for

responsive records.  Miller, 779 F.2d at 1383; Oglesby v. U.S. Dep't of the Army, 920 F.2d 57,

68 (D.C. Cir. 1990).  The agency is not required to search every record system, but only those

systems in which it believes responsive records are likely to be located.  See Miller, 779 F.2d at

1383 ("[T]he search need only be reasonable; it does not have to be exhaustive.").  Indeed, "the

issue to be resolved is not whether there might exist any other documents possibly responsive to

the request, but rather whether the search for those documents was adequate."  Weisberg v. DOJ,

745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphases in original).  "An agency may prove the

reasonableness of its search through affidavits of responsible agency officials so long as the

affidavits are relatively detailed, nonconclusory, and submitted in good faith."  Miller, 779 F.2d

at 1383.  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted

by 'purely speculative claims about the existence and discoverability of other documents.'"

SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

Here, the Secret Service used FIRS, its central index for its cases and investigations, to identify the location of responsive documents.  (Callahan Decl. ¶¶ 8-9).  Then the Secret Service searched two of its databases for records related to Plaintiff:  the PTMS and the IBR.  (Callahan Decl. ¶¶ 12-14).  The Secret Service employed a reasonable and adequate search "using methods which can be reasonably expected to," and, in this case, did, "produce the information requested."  Oglesby, 920 F.2d at 68 (citations omitted); see also Cunningham v. DOJ, 40 F. Supp. 3d 71, 85 (D.D.C. 2014), aff'd, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014) (summary judgment on adequacy of search appropriate where "FBI . . . searched the systems of records likely to possess the requested information").  The Court should find the Secret Service conducted a reasonable search for Plaintiff's records.

### III.   The Secret Service Properly Applied FOIA Exemptions to Redact Plaintiff's Pre-Conviction Records.

On May 2, 2019, the Secret Service released to Plaintiff 709 pages of responsive documents, with redactions on the basis of the FOIA exemptions contained in 5 U.S.C. §§ 552(b)(3); (b)(5); (b)(6); (b)(7)(C); (b)(7)(D); (b)(7)(E); and (b)(7)(F).  (Callahan Decl. ¶ 22).  Each of these redactions is detailed in the Secret Service's Vaughn Index.  (Callahan Decl. ¶ 23; Ex. 10).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  Media Research Ctr. v. DOJ, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (quoting Larson v. U.S. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Because no non-exempt responsive records have been improperly withheld from Plaintiff, summary judgment should be entered for the Secret Service.

### a.  Grand Jury Information, 5 U.S.C. § 552(b)(3).

The Secret Service invoked Exemption (b)(3) to withhold information sought and obtained pursuant to a federal grand jury investigation of Plaintiff.

Exemption (b)(3) incorporates nondisclosure provisions contained in other federal statutes.  See 5 U.S.C. § 552(b)(3).  Exemption (b)(3) applies to matters:

> specifically exempted from disclosure by statute . . . provided that such statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).  Under Exemption (b)(3), the Court should determine whether (1) the withholding statute qualifies as an Exemption 3 statute; and, (2) the records fall within the statute's scope.  See CIA v. Sims, 471 U.S. 159, 167 (1985).

Here, the Secret Service withheld information pursuant to Federal Rule of Criminal Procedure 6(e).  Rule 6(e) provides, with certain exceptions, a prohibition on disclosure of matters occurring before a grand jury.  "It is beyond dispute that Rule 6(e) is a statute requiring withholding under Exemption 3."  Peltier v. FBI, 2006 WL 8439445, at *9 (D. Minn. Oct. 24, 2006) (quotation omitted); see also May v. IRS, 85 F. Supp. 2d 939, 949 (W.D. Mo. 1999) (documents which reflect "matters occurring before the grand jury" are exempt from disclosure under § 552(b)(3)).  Protection of Rule 6(e) material in the FOIA context is "necessarily broad" and "encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors and the like."  Fund for Constitutional Gov't v. Nat'l Archives and Records Serv., 656 F.2d 856, 869 (D.C. Cir. 1981) (quotations omitted).

The Vaughn Index and the Callahan Declaration provide information supporting the Secret Service's redactions of grand jury information.  (Callahan Decl. ¶¶ 120-122; Ex. 10, Rev USSS 202; 203-222).  The redacted documents include information sought pursuant to a grand jury investigation of Plaintiff.  (Callahan Decl. ¶¶ 121-122; Ex. 10, Rev USSS 203-222; 618-

645).  Disclosing such information would reveal secret aspects of the grand jury's investigation, and have a chilling effect on future grand jury investigations.  See Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 218 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").  The Secret Service properly redacted documents pursuant to Exemption (b)(3).

### b. Attorney-Client Privilege, Work-Product, and Deliberative Process, 5 U.S.C. § 552(b)(5).

The Secret Service made numerous redactions pursuant to Exemption (b)(5), to protect attorney-client privileged communications, work-product, and agency deliberative process.  (Callahan Decl. ¶¶ 123-125; 127-129; Ex Parte Decl. ¶ 126; Ex. 10).

Exemption (b)(5) authorizes withholding "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Documents that would not be "routinely disclosed to a private party through the discovery process in litigation with the agency" may be withheld under Exemption (b)(5).  United States v. Weber Aircraft Corp., 465 U.S. 792, 799-800 (1984) (quotation omitted); see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).  Among recognized Exemption (b)(5) privileges are attorney-client communications, work-product, and deliberative process.  See, e.g., Nat'l Ass'n of Criminal Def. Lawyers v. DOJ Exec. Office for U.S. Att'ys, 844 F.3d 246, 249 (D.C. Cir. 2016).

### i. Attorney-Client Communications.

Agency communications, and related documents, subject to the attorney-client privilege would not be available by law to a party in litigation with the agency.  Exemption (b)(5) encompasses the attorney-client privilege.  Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 252-253 (D.C. Cir. 1977).  The attorney-client privilege exists "to encourage full and

frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  "The privilege applies primarily to facts divulged by the client to the attorney and includes opinions from the attorney to the client based on those facts. . . . Ultimately, the attorney-client privilege helps improve the quality of agency decisionmaking by safeguarding the free flow of information that is a necessary predicate for sound advice." Feshbach v. SEC, 5 F. Supp. 2d 774, 784 (N.D. Cal. 1997) (citations omitted).

The Secret Service redacted confidential communications between Secret Service personnel and Secret Service lawyers relating to the provision of legal advice. (Callahan Decl. ¶¶ 128-129; Ex. 10, Rev USSS 590-593).  The Secret Service properly redacted this information to protect the attorney-client privilege.  See North Dakota v. United States, 64 F. Supp. 3d 1314, 1330 (D.N.D. 2014) ("The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture.  Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys.") (quotations and citations omitted).

Further, the Secret Service redacted documents to protect communications between Secret Service personnel and federal prosecutors.  (Callahan Decl. ¶¶ 128-129; see, e.g., Ex. 10, Rev USSS 246-250; 502-503; 618-645).  The Court should find the Secret Service properly redacted this information as well.  See United States v. Zingsheim, 384 F.3d 867, 871 (7th Cir. 2004) ("The attorney client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government."); see also United States v. Acquest Transit LLC, 319 F.R.D. 83, 99 (W.D.N.Y. 2017).

### ii. Work-Product.

Materials prepared in anticipation of litigation would not be routinely disclosed in civil litigation because such materials are protected work-product under Fed. R. Civ. P. 26(b)(3). Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 926 F. Supp. 2d 121, 137 (D.D.C. 2013) (quoting Fed. R. Civ. P. 26(b)(3)(A)) ("The work-product doctrine protects materials 'prepared in anticipation of litigation or for trial by or for another party or its representative.'").  As such, they are subject to FOIA Exemption (b)(5).  In both civil discovery and FOIA contexts, the D.C. Circuit has advised the work-product doctrine "should be interpreted broadly and held largely inviolate."  Judicial Watch, Inc. v. DOJ, 432 F.3d 366, 369 (D.C. Cir. 2005) (citing Hickman v. Taylor, 329 U.S. 495, 510-511 (1947)).

Although the work-product doctrine applies most frequently when civil litigation is anticipated, the doctrine's "role in assuring the proper functioning of the criminal justice system is even more vital."  United States v. Nobles, 422 U.S. 225, 238 (1975).  Documents prepared in anticipation of criminal prosecution may be withheld as attorney work-product.  Id. at 238-239; Winterstein v. DOJ, Office of Info. & Privacy, 89 F. Supp. 2d 79, 81 (D.D.C. 2000) (there was "no question" that a DOJ Office of Special Investigations memo "prepared during the course of an investigation" was prepared in anticipation of litigation given "the contemplated prosecution" of the investigation's target); United States v. Two Bank Accts., No. 06-4005, 2007 WL 108392, at *2 (D.S.D. Jan. 5, 2007) ("Investigative reports of the FBI and interview notes by its agents are materials prepared in anticipation of litigation and are thus work product.").  For example, the Secret Service has identified as work-product an eleven page letter from the Secret Service to U.S. Attorney Drew Wrigley regarding Plaintiff, dated April 13, 2006.  (Callahan Decl., Ex. 10, Rev USSS 465-475).

In addition to protecting "factual materials prepared in anticipation of litigation," the

work-product doctrine particularly protects "the mental impressions, conclusions, opinions, or legal theories of an attorney."  Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997). "[O]pinion work product enjoys a very nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."[5]  In re Chrysler Motors Corp., 860 F.2d 844, 846 (8th Cir. 1988) (citation omitted).  And where those mental impressions, conclusions, and strategies can be deduced or inferred from the collection or context of facts collected or summarized, those facts and summaries are also protected.  See, e.g., United States v. Clemens, 793 F. Supp. 2d 236, 245 (D.D.C. 2011) ("facts elicited from an investigation" can reflect "an attorney's focus in a case").  With respect to attorney mental impressions, conclusion, opinions, or legal theories, the Secret Service has redacted a number of documents containing summaries of communications from Department of Justice attorneys, and Secret Service Office of Chief Counsel attorneys, related to the prosecution of Plaintiff.  (Callahan Decl., see, e.g., Ex. 10, Rev USSS 118-119; 219; 248-249; 494-495).  The Secret Service properly redacted work product.

### iii.  The Deliberative Process Privilege.

The deliberative process privilege is unique to the government.  Its purpose is to "prevent injury to the quality of agency decisions."  Sears, Roebuck, 421 U.S. at 151.  It covers all "communications received by the decision maker on the subject of the decision prior to the time the decision is made," and "all papers which reflect the agency's group thinking in the process of working out its policy," including "memoranda containing recommendations which do not ripen

---

[5]  Unlike in the civil discovery context, where "work product protection may be overcome for cause," FOIA does not include a "for cause" provision.  Williams & Connolly v. SEC, 662 F.3d 1240, 1243 (D.C. Cir. 2011).  That is because "any materials disclosed for cause are not 'routinely' or 'normally' discoverable and, for that reason, are exempt under FOIA."  Id. (citation omitted); see also Grolier Inc., 462 U.S. at 27 ("Whether its immunity from discovery is absolute or qualified, a protected document cannot be said to be subject to 'routine' disclosure.").

into agency decisions." Id. at 151-152, n.18. "The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998) (citation omitted).

> The deliberative process exemption permits non-disclosure if "the document is both predecisional and deliberative." The purpose of the deliberative process exemption is to avoid the harm that agency discussions are "chilled" by the disclosure and use of the agencies deliberative process memoranda and correspondence. A document is predecisional if it "contains personal opinions and is designed to assist agency decision-makers in making their decision." A document is deliberative if its disclosure or use would "expose the decision-making process in such a way that candid discussion within the agency would be discouraged, undermining the agency's ability to perform its functions."

North Dakota v. EPA, 127 F. Supp. 3d 1047, 1054 (D.N.D. 2015) (footnotes omitted).

As reflected in the Vaughn Index, the Secret Service invoked Exemption (b)(5) to protect documents containing pre-decisional and deliberative information, including strategies, discussions, and opinions of Secret Service Special Agents. (Callahan Decl., see, e.g., Ex. 10, Rev USSS 45-56; 118-119, 203-222). These pre-decisional discussions form the basis for ongoing decision-making regarding the Secret Service's continued monitoring, investigation, and assessment of Plaintiff's current and future risk to Secret Service protectees. (Callahan Decl. ¶ 124). Further, these discussions inform the process by which Secret Service decisions and policies are formulated and are used by the Secret Service in making final determinations of whether to proceed with proposed action. (Callahan Decl. ¶ 124). Agencies may protect such information from disclosure. See Dorset v. Dep't of Treasury, 307 F. Supp. 2d 28, 38 (D.D.C. 2004) ("The documents here clearly satisfy the deliberative process privilege standard as they are 'predicisional,' . . . (documents that contain "preliminary evaluations of the degree of danger presented by an individual [ ]"), and the documents are 'deliberative,' as they contain Secret

Service agents' opinions assessing the level of threat posed by plaintiff and third parties.").

Likewise, the Secret Service is invoking Exemption (b)(5) to protect opinions it solicited from and received from third parties, including a consultant hired by the Secret Service. (Callahan Decl., Ex. 10, Rev USSS 203-222; 405-424; 565-584).  "Under what has become known as the 'consultant corollary,' FOIA Exemption 5 can protect certain communications between an agency and an outside consultant."  100Reporters LLC v. DOJ, 248 F. Supp. 3d 115, 146 (D.D.C. 2017).  "When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an 'intra-agency' memorandum."  Ryan v. DOJ, 617 F.2d 781, 790 (D.C. Cir. 1980).

The release of pre-decisional, deliberative information would discourage frank and open discussions within the Secret Service during investigations on a wide range of security matters. (Callahan Decl. ¶ 125).  It also makes it less likely that Secret Service personnel will be candid in offering opinions and recommendations regarding internal Secret Service matters which could, in turn, negatively impact the Secret Service's ability to carry out its law enforcement responsibilities.  (Callahan Decl. ¶ 125).  This chilling effect would harm the protective and investigative efforts of the Secret Service.  (Callahan Decl. ¶ 125).  This exemption is particularly apt for this case, where disclosure would discourage the candid exchange of ideas and analysis required to conduct a thorough investigation and risk assessment of Plaintiff. (Callahan Decl. ¶ 125).  The Secret Service properly redacted documents under Exemption (b)(5).

### c.   Personnel, Medical, and Similar Files, 5 U.S.C. § 552(b)(6).

The Secret Service made numerous redactions pursuant to Exemption (b)(6) to protect the

personal information of private parties, including individuals who were identified in the criminal investigation or protective intelligence investigation, as well as law enforcement personnel. (Callahan Decl. ¶ 94, Ex. 10).  This personal identifying information—including names, birth dates, social security numbers, driver's license numbers, telephone numbers, home addresses, and email addresses, among others—appears throughout the responsive documents.  (Callahan Decl. ¶¶ 94; 96; see, e.g., Ex. 10, Rev USSS 14-15; 58-60; 196-198).

FOIA Exemption (b)(6) protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The statutory language concerning files "similar" to personnel or medical files is read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from Government records."  U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982).  "The threshold is fairly minimal, such that all information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained."  Concepcion v. FBI, 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (citations and quotations omitted).  The primary purpose of enacting Exemption (b)(6) was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  Wash. Post Co., 456 U.S. at 599; see also Rogers v. Davis, No. 4:08-cv-177, 2009 WL 213034, at *3 (E.D. Mo. Jan. 28, 2009) (release of federal employee names "may subject [employees] to embarrassment, harassment, or retaliation.").

"To determine whether information has been properly withheld under a FOIA exemption, a court must balance the public interest in favor of disclosure against the privacy interest Congress intended for the exemption to protect."  Ehlmann v. DHS, No. 4:12-cv-1392, 2013 WL

3724906, at *2 (E.D. Mo. July 15, 2013) (quoting <u>U.S. Dep't of Def. v. Fed. Labor Relations</u>

<u>Auth.</u>, 520 U.S. 487, 495 (1994)).

> "If there is an important public interest in the disclosure of information and the
> invasion of privacy is not substantial, the private interest in protecting the
> disclosure must yield to the superior public interest."  <u>Alirez v. NLRB</u>, 676 F.2d
> 423, 426 (10th Cir. 1982).  If, however, the public interest in the information is
> "virtually nonexistent" or "negligible," then even "a very slight privacy interest
> would suffice to outweigh the relevant public interest."  <u>FLRA</u>, 510 U.S. at 497.

<u>Id.</u>  "The only relevant 'public interest' in disclosure to be weighted in this balance is the extent

to which disclosure would serve 'the core purpose of the FOIA,' which is 'contributing

significantly to public understanding of the operations or activities of the government.'"  <u>Rogers</u>,

2009 WL 213034, at *2 (quoting <u>FLRA</u>, 510 U.S. at 495).  "[T]he purpose for which the FOIA

request is made is irrelevant to whether an invasion of privacy is warranted."  <u>Id.</u> (citing <u>FLRA</u>,

510 U.S. at 496).

Here, balancing weighs heavily against disclosure of personal identifying information.

With respect to private parties named in Plaintiff's file, there is limited public interest in the

disclosure of their personal identifying information.  Such information reveals nothing about the

manner in which the Secret Service conducts its operations or activities.  <u>See Ehlmann</u>, 2013 WL

3724906, at *4 (finding FEMA properly withheld names and addresses of insurance claimants

because disclosure would not serve any substantial public interest or shed light on FEMA's

program management).  Further, as detailed in the <u>Ex Parte</u> Declaration, the Secret Service has

grave concerns about providing Plaintiff with information related to private individuals named in

his file.  (<u>Ex Parte</u> Decl. ¶ 103).  More generally, there is a "strong public interest in encouraging

witnesses to participate in future government investigations," and disclosing names and other

identifying information would discourage such participation.  <u>Perlman v. DOJ</u>, 312 F.3d 100,

106 (2d Cir. 2002), <u>vacated by</u> 541 U.S. 970 (2004), <u>reinstated after remand</u>, 380 F.3d 110 (2d

Cir. 2004).  The Court should find the privacy interests of private parties here outweighs the public's interest in disclosure.

With respect to personal identifying information of law enforcement personnel, the individuals' privacy interests also outweigh public disclosure.  There is limited public interest in the disclosure of the identifying information of law enforcement personnel because such information reveals little about the manner in which the Secret Service conducts its business. See Adams v. DOJ, No. 10-3117, 2012 WL 4468468, at *3 (W.D. Ark. Aug. 8, 2012) ("Redaction of Government employee initials and the like does not inhibit the public's understanding of the government agency, and no 'substantial public interest' would [be] served by release of this information."); Putnam v. DOJ, 880 F. Supp. 40, 42 (D.D.C. 1995) ("The identities of federal, state and local law enforcement personnel . . . would not shed light on the government's conduct with respect to any closed or ongoing investigation.").

Further, as detailed in the Ex Parte Declaration, the Secret Service also has significant safety concerns about providing Plaintiff with names and identifying information of Secret Service personnel who have worked on his case.  (Ex Parte Decl. ¶ 99).  Indeed, the public interest is best served by non-disclosure of law enforcement identifying information, because disclosure could result in the harassment of law enforcement personnel, and, by extension, a diminishment of the ability of law enforcement personnel to perform their duties.  See Wilson v. DOJ, 192 F. Supp. 3d 122, 126 (D.D.C. 2016) (withholding identifying information for law enforcement personnel is justified).  The privacy rights of law enforcement personnel outweigh the public's interest in disclosure.

### d.  The Law Enforcement Purposes Exemptions.

The Secret Service has redacted information pursuant to FOIA Exemptions (b)(7)(C),

(b)(7)(D), (b)(7)(E), and (b)(7)(F).  The threshold requirement of (b)(7) exemptions is that the records or information be compiled for law enforcement purposes.  5 U.S.C. § 552(b)(7); John Doe Agency, 493 U.S. at 153.

The Eighth Circuit has established that as long as the records at issue "comprise investigatory records of a criminal law enforcement agency, . . . they meet exemption 7's threshold requirement of having been 'compiled for law enforcement purposes.'"  Kuehnert v. FBI, 620 F.2d 662, 667 (8th Cir. 1980); see also Tax Analysts v. IRS, 294 F.3d 71, 77 (D.C. Cir. 2002) ("[C]ourts apply a more deferential standard to a claim that information was compiled for law enforcement purposes when the claim is made by an agency whose primary function involves law enforcement.").  The records here were compiled in connection with both the Secret Service's investigation of possible criminal conduct on the part of Plaintiff and the Secret Service's continuing investigation of Plaintiff relating to the Secret Service's protective mission. Such records qualify as "investigatory."  See Moorefield v. U.S. Secret Serv., 611 F.2d 1021, 1026 (5th Cir. 1980) (finding background and other matters specifically relevant to the requestor, and prepared to help the Secret Service fulfill its duty of ensuring the lives and safety of its protectee and others, were plainly investigatory records).

The Secret Service is a law-enforcement agency that performs a protective and criminal investigative mission under the provisions of 18 U.S.C. § 3056.  (Callahan Decl. ¶ 29).  Courts have long recognized that "law enforcement proceedings" under FOIA are broader than just "judicial proceedings," and include the work of the Secret Service in "investigating and observing persons who present threats to Service protectees."  See Moorefield, 611 F.2d at 1025 ("Notwithstanding that Service investigations are not directed toward trials or hearings, they are certainly directed toward an active and concrete effort to enforce the law in fact, nothing could

be more 'active and concrete' than activities that are part of the security apparatus that surrounds

the President of the United States.").  As Justice Alito said in <u>Milner v. Dep't of the Navy</u>,

"[t]here can be no doubt. . . that the Secret Service acts with a law enforcement purpose when it

protects federal officials from attack."  562 U.S. 562, 583 (2011) (Alito, J., concurring).

The records at issue meet the threshold of FOIA Exemption (b)(7) and are subject to

withholding in part under related FOIA Exemptions as described below.

### i.   Invasion of Personal Privacy, 5 U.S.C. § 552(b)(7)(C).

Like FOIA Exemption (b)(6), FOIA Exemption (b)(7)(C) protects personal privacy

interests.  Exemption (b)(7)(C) protects "records or information compiled for law enforcement

purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion

of personal privacy."  5 U.S.C. § 552(b)(7)(C).

For the reasons discussed for Exemption (b)(6), the Secret Service properly withheld

information under Exemption (b)(7)(C) because the privacy interests of the individuals

concerned outweigh the minimal public interest.  Exemptions (b)(6) and (b)(7)(C) are analyzed

similarly because both call for balancing the same interests.  See <u>ACLU v. DOJ</u>, 655 F.3d 1, 6

(D.C. Cir. 2011).  "[B]ecause Exemption 7(C) permits withholding of such records if disclosure

would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a

'<u>clearly</u> unwarranted' invasion to justify nondisclosure, 'Exemption 7(C) is more protective of

privacy than Exemption 6' and thus establishes a lower bar for withholding material."  <u>Id.</u>

(quoting <u>FLRA</u>, 510 U.S. at 496 n.6); <u>see also</u> <u>Hulstein v. DEA</u>, 671 F.3d 690, 695-696 (8th Cir.

2012) ("The law enforcement exemption for personal privacy offers more protection from

disclosure than the more general personal privacy exemption in FOIA.").  As discussed above

with respect to FOIA Exemption (b)(6), the Secret Service properly balanced the privacy

interests of private parties and law enforcement personnel against the public interest in disclosure.  See Hulstein, 671 F.3d at 696 (DEA could withhold names of agents involved in investigation, as well as names of private citizens mentioned in law enforcement records, as privacy interests outweighed interest in disclosure); Kuehnert, 620 F.2d at 667 (FBI properly withheld names and related information of individuals connected with or the subject of FBI investigation pursuant to Exemption (b)(7)(C), as unwarranted invasion of personal privacy would accompany disclosure).  The Secret Service properly redacted information pursuant to Exemption (b)(7)(C).

### ii.  Identity of Confidential Source, 5 U.S.C. § 552(b)(7)(D).

The Secret Service redacted information to protect confidential sources.  (Callahan Decl. ¶ 107).  Under Exemption (b)(7)(D) an agency may withhold or redact law enforcement records the disclosure of which:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  Unlike Exemption (b)(6) and (b)(7)(C), Exemption (7)(D) requires no balancing of public and private interests.  See Parker v. DOJ, 934 F.2d 375, 380 (D.C. Cir. 1991).  The exemption applies if the agency establishes a source has "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  DOJ v. Landano, 508 U.S. 165, 172 (1993).  "[A]n implied assurance of confidentiality rests on the nature of the alleged crime and the witness's relationship to the crime."  Hulstein, 671 F.3d at 695.

Here, some responsive records contain information from express confidential informants.

(Callahan Decl. ¶ 108).  Additionally, many of the individuals providing information in the

Secret Service's criminal investigation and ongoing protective intelligence investigation

provided information under implied confidentiality.  (Callahan Decl. ¶ 108).  The Secret Service

is concerned Plaintiff will retaliate against individuals who have assisted the Secret Service,

particularly if Plaintiff is made aware of the nature of those communications and the extent to

which the individuals have provided assistance.  (Ex Parte Decl. ¶¶ 110-112).  The Court should

find the Secret Service properly redacted information pursuant to Exemption 7(D).

### iii.  Disclosure of Sensitive Law Enforcement Techniques, 5 U.S.C. § 552(b)(7)(E).

The Secret Service made redactions to protect the law enforcement techniques and

procedures it uses to investigate, assess, and monitor individuals that pose a risk to its protectees.

(Callahan Decl. ¶ 113).  Exemption (b)(7)(E) protects from disclosure:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . .
> would disclose techniques and procedures for law enforcement investigations or
> prosecutions, or would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to risk circumvention
> of the law.

5 U.S.C. § 552(b)(7)(E).  This exemption covers "investigatory records that disclose

investigative techniques and procedures not generally known to the public," Doherty v. DOJ, 775

F.2d 49, 52 n.4 (2d Cir. 1985), including where "the manner and circumstances of the techniques

are not generally known."  Bishop v. DHS, 45 F. Supp. 3d 380, 391 (S.D.N.Y. 2014).

"Exemption 7(E) sets a 'relatively low bar for the agency to justify withholding:  rather

than requiring a highly specific burden of showing how the law will be circumvented, exemption

7(E) only requires that the agency demonstrate logically how the release of the requested

information might create a risk of circumvention of the law.'"  N.Y. Times Co. v. DOJ, 101 F.

Supp. 3d 310, 319 (S.D.N.Y. 2015) (quoting Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir.

2011)).  Moreover, the requirement that "disclosure could reasonably be expected to risk

circumvention of the law" applies to law enforcement "guidelines" but not "techniques and

procedures.'"  Allard K. Lowenstein Intern. Human Rights Project v. DHS, 626 F.3d 678, 681

(2d Cir. 2010); see also N.Y. Times Co., 101 F. Supp. 3d at 319-20 ("The qualifying phrase 'if

such disclosure could reasonably be expected to risk circumvention of the law' modifies only

'guidelines' and not 'techniques and procedures.'").  Further, Congress meant Exemption

(b)(7)(E) to protect from disclosure techniques and procedures used to prevent and protect

against crimes as well as techniques and procedures used to investigate crimes after they've been

committed.  Elec. Privacy Info. Ctr. v. Customs & Border Prot., 248 F. Supp. 3d 12, 18 (D.D.C.

2017), aff'd sub nom. Elec. Privacy Info. Ctr. v. United States Customs & Border Prot., No. 17-

5078, 2017 WL 4220339 (D.C. Cir. Aug. 1, 2017) (holding Congress did not intend to limit

Exemption (b)(7)(E)'s scope to records compiled in connection with criminal investigations; it

extends to tools used for the detection and prevention of crime).

    The information redacted by the Secret Service reveals methods of the Secret Service's

protective work that are not widely known to the general public, including, for example,

information regarding Secret Service manpower allocations, identification of a specialized Secret

Service unit, and protective techniques.  (Callahan Decl., see e.g., Ex. 10, Rev USSS 147-151;

165-170; 177-195).  Release of this information could benefit those attempting to harm Secret

Service protectees by revealing protective measures in place and techniques the Secret Service

uses to determine whether a particular individual poses a risk to a protectee.  (Callahan Decl. ¶

114).  Release of this information would allow circumvention of protective measures in place.

(Callahan Decl. ¶ 114).

Significant portions of the documents provide detailed information regarding how the Secret Service investigates, monitors, and assesses the risks of a protective intelligence subject. (Callahan Decl. ¶ 115).  Disclosure of these techniques would hamper not only the current investigation of Plaintiff, but the Secret Service's investigation of all other current and future protective intelligence subjects.  Id.  Public disclosure of these techniques would allow Plaintiff, and others seeking to do harm to Secret Service's protectees, insight into how to circumvent the Secret Service's investigations and evade detection.  Id.  The Secret Service properly redacted information pursuant to Exemption 7(D).

### iv.   Endangering the Life or Safety of Any Individual, 5 U.S.C. § 552(b)(7)(F).

The Secret Service redacted documents to protect the life and physical safety of its protectees, of individuals who have given information to the Secret Service, and of federal law-enforcement personnel.  (Callahan Decl., Ex. 10).  Exemption (b)(7)(F) protects from disclosure information compiled for law enforcement purposes where release of information "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  "In evaluating the validity of an agency's invocation of Exemption 7(F), the court should within limits, defer to the agency's assessment of danger."  Garcia v. DOJ, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) (citation omitted).  "'The same information withheld under exemption (b)(7)(C) may be withheld under exemption (b)(7)(F) to protect against risk of personal injury.'"  Peltier, 2006 WL 8439445, at *13 (quoting Watson v. DOJ, 799 F. Supp. 193, 197 (D.D.C 1992) (noting that "release of agents' identities could result in harm to the agents")).  Likewise, "'the same reasons that underlay the applicability of Exemption 7(D) . . . also justify the applicability of Exemption 7(F).'"  Id. (quoting Garcia, 181 F. Supp. 2d at 378).

For redactions the Secret Service made pursuant to Exemption (b)(7)(F), it also redacted

the same information pursuant to Exemptions (b)(6) and (b)(7)(C), and when appropriate, (b)(7)(D).  (Callahan Decl., see, e.g., Ex. 10, 8-9, 12, 16-17).  As demonstrated above, the disclosure of personal identifying information of private parties and law enforcement personnel puts those individuals at risk—including the risk of physical harm.  See, supra, Sections III (c) and (d)(i), (ii).  The Secret Service properly redacted information pursuant to Exemption (7)(E).

### IV.   The Secret Service Properly Withheld Plaintiff's Post-Conviction Records Under FOIA Exemption (b)(7)(A).

The Secret Service is withholding Plaintiff's post-conviction records in the Reports and Mental Health categories, and is withholding certain of Plaintiff's post-conviction records in the Open Source category, because release of these records would interfere with the Secret Service's open protective intelligence investigation of Plaintiff.  (Callahan Decl. ¶ 81).  FOIA Exemption (b)(7)(A) protects from disclosure records that are "compiled for law enforcement purposes" if producing those records "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  "In light of the important interests protected by Exemption 7(A), an agency is entitled to summary judgment if it can make a showing that (1) a law enforcement proceeding is pending or prospective, and (2) release of the requested information could generally be expected to cause some articulable harm."  Ameren Missouri v. EPA, 897 F. Supp. 2d 802, 810 (E.D. Mo. 2012) (citation omitted).

#### a.   The Withheld Records Relate to a Pending or Prospective Law Enforcement Proceeding.

As established in the discussion of the Law Enforcement Purposes Exemptions, Section III d., supra, the records at issue here "comprise investigatory records of a criminal law enforcement agency" and thus "meet exemption 7's threshold requirement of having been 'compiled for law enforcement purposes.'"  Kuehnert, 620 F.2d at 667.

Further, the Secret Service records relate to a "pending or prospective" proceeding.  As a result of his criminal activity and threats against the President, mental evaluations, and other factors outlined in the Ex Parte Declaration, Plaintiff is the subject of an active protective intelligence investigation.  (Callahan Decl. ¶¶ 44, 66, 76, 79; Ex Parte Decl. ¶¶ 45-46; 48; 50-51; 54-57; 64; 67-75; 77-78).  Plaintiff's argument in his administrative appeal—that the statute of limitations has expired on the allegations that he threatened and/or attempted to murder President Bush in February 2005 (Doc. 1-4)—is of no consequence.  The records here meet the first prong of FOIA Exemption (b)(7)(A).

> **b.  Release of the Withheld Records Would Interfere with the Secret Service's Active Protective Intelligence Investigation.**

With respect to the second prong of the FOIA Exemption (b)(7)(A) analysis, releasing the Secret Service's records related to Plaintiff could reasonably be expected to harm, and thus interfere with, the Secret Service's active protective intelligence investigation of Plaintiff.  See Ameren Missouri, 897 F. Supp. 2d at 810.  "'Articulable harm' is demonstrated if disclosure would give the requester 'advance access to the government's case,' or allow a 'suspected violator' to 'construct defenses which would permit violations to go unremedied.'"  Id. (citing NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 236-237 (1978)).  "'Articulable harms' include the possibility of witness intimidation, destruction of evidence, or the creation of false alibis."  Id. (citing Goodrich Corp. v. EPA, 593 F. Supp. 2d 184, 193-194 (D.D.C. 2000)).

"Under Exemption 7(a), the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding."  Barney, 618 F.2d at 1273 (citing Robbins Tire & Rubber Co., 437 U.S. at 234-235).  Instead, the agency "must define functional categories of documents; it must conduct a document-by-document review to assign documents to proper categories; and it

must explain to the court how the release of each category would interfere with enforcement proceedings." In re DOJ, 999 F.2d 1302, 1309-1310 (8th Cir. 1993) (citing Bevis v. Dep't of State, 801 F.2d 1386, 1389 (D.C. Cir. 1986)).[6]  When evaluating Exemption (b)(7)(A) withholdings, courts "give deference to an agency's predictive judgment of the harm that will result from disclosure of information." Citizens for Responsibility & Ethics in Wash. v. DOJ, 746 F.3d 1082, 1098 (D.C. Cir. 2014).

Here, the Secret Service is fully withholding two categories of documents—Reports and Mental Health records—and withholding some records gathered through Open Source methods.

### i. Reports.

The records in the Reports category include various reports and documents drafted about Plaintiff by both Secret Service personnel and other law enforcement entities.  (Callahan Decl. ¶ 82).  The records in this category include internal communications and external communications between the Secret Service and other entities.  (Callahan Decl. ¶ 82).  The Secret Service is withholding the Reports category in full because it provides detailed information regarding the Secret Service's ongoing protective intelligence investigation.  (Callahan Decl. ¶ 83).  This information includes specific techniques in investigating Plaintiff's risk to protectees; protective measures put in place to mitigate the risks posed by Plaintiff; the names of individuals or other sources, including other law enforcement entities, cooperating with the Secret Service to provide information regarding Plaintiff; the extent to which individuals are participating in the Secret Service's investigation and the information they have provided to the Secret Service; and the

---

[6] In the Eighth Circuit, no Vaughn index is required where the basis for withholding documents is Exemption (7)(A).  In re DOJ, 999 F.2d at 1311 (holding it was error to require agency to provide Vaughn index); Barney, 618 F.2d at 1273-1274 (no Vaughn index required when the record was clear that there was an ongoing law enforcement investigation of the FOIA requestor).

factors the Secret Service weigh to determine whether Plaintiff continues to pose a threat to Secret Service protectees. (Callahan Decl. ¶ 83). Release of this information while the Secret Service's investigation is ongoing would jeopardize the investigation, giving Plaintiff the ability to elude detection or suppress or fabricate information to interfere with efforts to mitigate risks posed to protectees. (Callahan Decl. ¶ 84).

### ii. Mental Health Information.

The records in the Mental Health category include formal psychological evaluations in which Plaintiff participated, as well as psychological profiles of Plaintiff completed by Secret Service personnel. (Callahan Decl. ¶ 85). This category of records is fully withheld because these records provide critical insight into factors the Secret Service uses to assess an individual's level of risk. (Callahan Decl. ¶ 85). Release of this information to Plaintiff would substantially impact the Secret Service's ability to continue to assess the risk Plaintiff poses, as he would be able to circumvent Secret Service techniques and/or intentionally deceive the Secret Service. (Callahan Decl. ¶ 86).

### iii. Open Source Information.

The records in the Open Source category include documents collected through open-source intelligence gathering. (Ex Parte Decl. ¶¶ 88; 90-92). The Secret Service has released to Plaintiff some of the information in this category, specifically news articles regarding Plaintiff; these documents are publically available and their release does not compromise the Secret Service's ability to safeguard its protectees. (Callahan Decl. ¶ 89). However, release of other information in this category would have a negative impact on the Secret Service's mission. (Ex Parte Decl. ¶¶ 90-92).

Withholding the Reports, Mental Health Information, and Open Source Information categories prevents Plaintiff's access to sensitive information necessary to help the Secret Service monitor Plaintiff and prevent harm to Secret Service protectees.  Release of this information would cause "articulable harm" to the Secret Service's ongoing protective intelligence investigation.  See Moorefield, 611 F.2d at 1026 (affirming Secret Service withholding of the plaintiff's Secret Service file pursuant to Exemption (b)(7)(A), as "disclosure of these materials could tend generally to inform targets of Secret Service investigations of the means the Service employs to keep abreast of them, and specifically, to enable [targets] to elude the scrutiny of the Service, with potentially disastrous results.").  The records here meet the second prong—interference—of FOIA Exemption (b)(7)(A).  The Secret Service properly withheld documents pursuant to FOIA Exemption (b)(7)(A).

### V.    The Secret Service Met Its Obligation To Reasonably Segregate Non-Exempt Information.

Pursuant to 5 U.S.C. § 552(b), if a record contains information exempt from disclosure, any "reasonably segregable" non-exempt information must be released after deleting the exempt portions.  If the non-exempt information is inextricably intertwined with the exempt information, it is not considered reasonably segregable.  See Mead Data, 566 F.2d at 260.  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show with "reasonable specificity" that the information it has withheld cannot be further segregated.  Armstrong v. Exec. Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996); Canning v. DOJ, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  Sussman v. USMS, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The Secret Service conducted a document-by-document review and determined what portions of documents it could release and what it must withhold.  (Callahan Decl. ¶¶ 19; 24-25; 80-81; 130).  The Secret Service produced all[7] its pre-conviction documents, with appropriate redactions, as well as all post-conviction documents from the Court Documents category, and certain post-conviction Open Source documents, on May 2, 2019, and as Exhibit 11.  (Callahan Decl. ¶¶ 22; 24, 81).  The Secret Service has not withheld any reasonably segregable non-exempt portions of documents from Plaintiff.  (Callahan Decl. ¶ 131).  The Secret Service has produced all "reasonably segregable" non-exempt information.

## VI.   Several Other FOIA Exemptions Protect The Post-Conviction Documents From Full Disclosure.

FOIA Exemption (b)(7)(A) justifies withholding post-conviction records related to Plaintiff.  However, in the event the Secret Service's protective intelligence investigation of Plaintiff closes, or the Court finds Exemption (b)(7)(A) inapplicable, several other FOIA Exemptions also protect the records from full disclosure.  These FOIA Exemptions include previously discussed exemptions 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).  (Callahan Decl. ¶ 93).  If the Court finds FOIA Exemption (b)(7)(A) inapplicable, the Secret Service requests the Court permit the Secret Service to withhold and redact the post-conviction records in accordance with the aforementioned Exemptions.

---

[7] The Secret Service is not producing certain records belonging to the FBI and BOP, as described in Note 2, supra.

## CONCLUSION

The Secret Service respectfully requests the Court grant this motion for summary judgment, and find the Secret Service has complied with its obligations under the FOIA, 5 U.S.C. §552.

Dated:  May 30, 2019.

DREW H. WRIGLEY
United States Attorney

By:    */s/ James Patrick Thomas*
        JAMES PATRICK THOMAS
        Assistant United States Attorney
        ND Bar Board ID No. 06014
        P.O. Box 699
        Bismarck, ND  58502-0699
        (701) 530-2420
        james.p.thomas@usdoj.gov
        Attorney for United States Secret Service

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2019 the foregoing document, and Declaration of William J. Callahan Deputy Director, United States Secret Service, with accompanying Exhibits 1-11, were filed electronically with the Clerk of Court through ECF.

I further certify that copies of this document, and Declaration of William J. Callahan Deputy Director, United States Secret Service, with accompanying Exhibits 1-11, were sent via FedEx, for Standard Delivery [TRK# 7753 4390 4432], to non-ECF participating party:

Daniel Edward Cvijanovich
2433 20th Ave. S., Apt. 305
Fargo, ND  58103

Dated:  May 30, 2019

/s/ *James Patrick Thomas*
JAMES PATRICK THOMAS
Assistant United States Attorney