UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| DANIEL EDWARD CVIJANOVICH, | Case No. 3:18-cv-220 |
| Plaintiff, | **REPLY MEMORANDUM OF** |
| v. | **UNITED STATES SECRET** |
| | **SERVICE IN SUPPORT OF** |
| UNITED STATES SECRET SERVICE, | **MOTION FOR SUMMARY** |
| | **JUDGMENT** |
| Defendant. | |

Despite his threats against then-President George W. Bush, criminal history, and other disturbing factors, plaintiff Daniel Cvijanovich ("Plaintiff") claims in Plaintiff's Response to Motion for Summary Judgment (Doc. 41) that he should no longer be of concern to the United States Secret Service ("Secret Service"). Further, Plaintiff argues he should be given the Secret Service's most sensitive information regarding its past and on-going protective intelligence investigation of Plaintiff—namely documents containing information protected by the FOIA Exemptions found at 5 U.S.C. §§ 552(b)(5) (attorney-client, work-product, and deliberative process), (b)(7)(E) (sensitive law-enforcement techniques, procedures, or guidelines), (b)(7)(F) (information that may endanger the life or safety of an individual), and (b)(7)(A) (information relating to a law enforcement proceeding, the release of which would harm the proceeding).[1] Plaintiff's objections are unsupported by law. Moreover, Plaintiff's claim that he is no longer a concern to Secret Service protectees is both irrelevant for purposes of FOIA and refuted by the Secret

---

[1] Plaintiff argues the Court should, at minimum, perform an in camera review of the Secret Service's records to determine if the Secret Service has properly applied the FOIA Exemptions. The Court can decide this matter on the briefs, declarations (Docs. 26, 28), and Vaughn index (Doc. 26-10) without resorting to in camera review.

Service's declarations in support of this motion.  The Court should find the Secret

Service has complied with its obligations under FOIA and grant the Secret Service's

motion for summary judgment. [2]

## I.     The Secret Service Properly Applied FOIA Exemptions to Redact Plaintiff's Pre-Conviction Records.

No non-exempt responsive records have been improperly withheld from Plaintiff,

and the Secret Service is entitled to summary judgment.

### a.   Attorney-Client Privilege, Work-Product, and Deliberative Process, 5 U.S.C. § 552(b)(5).

Plaintiff misconstrues the purpose and effect of Exemption (b)(5) in several

fundamental ways.  First, Plaintiff appears to believe that to receive (b)(5) protection, a

document must be created in anticipation of civil litigation.  (Doc. 41 at 1–2.)  In support,

Plaintiff cites United States v. Weber Aircraft Corp., "The House report [on the FOIA]

states that Exemption 5 was intended to allow an agency to withhold intra-agency

memoranda which would not routinely be disclosed to a private party through the

discovery process in litigation with the agency." 465 U.S. 792, 799–800 (1984)

(emphasis added by Plaintiff). (Doc. 41 at 2.)  This is a misreading of the case law.  The

civil litigation language is designed to define the types of protected information falling

under Exemption (b)(5); it is the framework used to assess what types of material

---

[2] Plaintiff does not contest any of the specific facts the Secret Service stated in its brief. Nor has Plaintiff objected to the adequacy of the Secret Service's search for documents, withholdings under the FOIA exemptions found at §§ 552(b)(3) (grand jury information); (b)(6) (personnel, medical, and similar files); (b)(7)(C) (invasion of personal privacy); and (b)(7)(D) (identity of confidential sources), or segregation of pre-conviction documents.

agencies do not have to disclose under FOIA.  The language does not limit Exemption (b)(5)'s protection to documents created in the civil litigation context.

The Secret Service is not aware of case law requiring documents be created in anticipation of civil litigation to receive protection under Exemption (b)(5), or case law prohibiting agencies from invoking Exemption (b)(5) to withhold documents simply because the documents were created in an underlying criminal proceeding.  Plaintiff cites no authority supporting his erroneous interpretation of Exemption (b)(5).  Courts have long recognized Exemption (b)(5) protects documents created in or related to an underlying criminal investigation or proceeding.  See, e.g., ACLU of N. Cal. v. DOJ, 880 F.3d 473, 486–87 (9th Cir. 2018) (DOJ properly withheld portions of agency manual intended to assist prosecutors defending government position on obtaining certain evidence under Exemption (b)(5)); Ellis v. DOJ, No. 15-5198, 2016 WL 3544816, at *1 (D.C. Cir. June 13, 2016) aff'g Ellis v. DOJ, 110 F. Supp. 3d 99, 109–10 (D.D.C. 2015) (collecting cases) (DOJ properly withheld, under Exemption (b)(5), work-product records relating to wiretap surveillance supporting federal drug and firearm charges); Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1202–03 (D.C. Cir. 1991) (Exemption (b)(5) allowed agency to withhold work-product created during law enforcement investigations into potentially unlawful stock trades by specific individuals); Antonelli v. ATF, 555 F. Supp. 2d 16, 24–25 (D.D.C. 2008) (ATF properly withheld under Exemption (b)(5) "inter-agency communications [from an Assistant United States Attorney to the Bureau of Prisons] made in anticipation of litigation, both of which discussed litigation strategy . . . and third party individuals in connection with the criminal prosecution"); Dorset v. Dep't

3

of Treasury, 307 F. Supp. 2d 28, 37–38 (D.D.C. 2004) ("Clearly, in that the above-referenced documents provide the opinions and evaluations of Special Agents concerning the plaintiff's and other parties' level of threat to Secret Service protectees that were made prior to the initiation of any criminal proceeding, the documents falls within Exemption 5's deliberative-process protection.").

Second, Plaintiff argues that if Exemption (b)(5) applies, it must relate to a "pending or at least possible prosecution." (Doc. 41 at 2.) Plaintiff speculates "it is very difficult to imagine how disclosure of internal Secret Service deliberations around matters that have been settled for over a decade would have any sort of chilling effect within the agency." (Doc. 41 at 3.) Again, Plaintiff fails to cite any case law in support of his position that documents lose protection simply because a matter is old or no longer likely to result in a prosecution. The Supreme Court has held to the contrary: "under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." FTC v. Grolier, 462 U.S. 19, 28 (1983). See also Jackson v. U.S. Attorney's Office, Dist. of N.J., 293 F. Supp. 2d 34, 40 (D.D.C. 2003) ("The fact that the litigation for which the document was prepared—presumably, a prosecution of Jackson's perjury complaint—did not occur or has otherwise been terminated does not prevent the government from properly invoking Exemption 5."); Heggestad v. DOJ, 182 F. Supp. 2d 1, 12 (D.D.C. 2000) (holding Exemption (b)(5) protected deliberative process and work-product protected document even when the document was prepared after prosecution concluded).

More importantly, Plaintiff's argument undercuts the fundamental purpose of

4

Exemption (b)(5), particularly with respect to the deliberative process privilege. "The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998) (citation omitted). If agency officials knew this protection would be lost with the mere passage of time, they would be less likely to engage in the candid and open discussions necessary to effectively carry out the agency's mission. See Gutman v. DOJ, 238 F. Supp. 2d 284, 292 (D.D.C. 2003) ("[T]he deliberative-process ensures that government agencies are not forced to operate in a fishbowl.")

Finally, Plaintiff argues if a document would be discoverable in a criminal proceeding, Exemption (b)(5) cannot protect it. (Doc. 41 at 2.) This argument is also unsupported. "[D]isclosure in criminal trials is based on different legal standards than disclosure under FOIA, which turns on whether a document would usually be discoverable in a civil case." Williams & Connolly v. SEC, 662 F.3d 1240, 1245 (D.C. Cir. 2011). "In criminal trials, evidentiary privileges may give way for any number of reasons," including, for example, the government's obligations to produce evidence favorable to the accused under Brady v. Maryland, . . . or to disclose items it will use in its case-in-chief, under Federal Rule of Criminal Procedure 16. Williams & Connolly, 662 F.3d at 1244 (internal citation omitted). "Similar documents, in other words, are not—indeed must not be—treated similarly in the two different types of proceedings." Id. at 1245. The plain language of the statute indicates Congress intended for the broader civil litigation protections to apply.

### b.  Disclosure of Sensitive Law Enforcement Techniques, 5 U.S.C. § 552(b)(7)(E).

With respect to Exemption (b)(7)(E), Plaintiff claims he is asking for only files on himself and not "disclosure of training manuals or other such explicit descriptions of Secret Service techniques."  (Doc. 41 at 3.)  Plaintiff also argues that because a nearly twenty-year-old government document[3] is available to the public on the Internet, he should be able to obtain records to see what techniques the Secret Service has employed with respect to him.  (Doc. 41 at 4.)

Disclosure of documents related to Plaintiff's case would reveal how the Secret Service employs techniques in a specific situation.  This information would be of great value to those attempting to harm Secret Service protectees because it reveals how Secret Service protective measures and techniques are applied in practice.  See Unidad Latina en Acción v. DHS, 253 F.R.D. 44, 52 (D. Conn. 2008) ("Contrary to Plaintiff's assertions, however, this general report on the overall structure of Fugitive Operations Teams and information gathering, receipt, and processing does not reveal the highly-specific information contained in the withheld documents that, if disclosed, would reveal not only the precise investigative or surveillance techniques immediately preceding the operation but also operation-specific information that could allow unapprehended targets to evade law enforcement personnel in the future."); Blanton v. DOJ, 63 F. Supp. 2d 35, 49–50

---

[3] The Secret Service records relating to Plaintiff post-date, by several years, the January 2000 publication date of the document cited by Plaintiff.  Plaintiff's records are likely to include newer or updated techniques when compared to those described in the document Plaintiff cites.

(D.D.C. 1999) (finding publicly available information regarding FBI's use of polygraph tests did not require disclosure of FBI information discussing "the structure, pattern and sequence of questions, along with their varying degrees of intensity," as such information would allow individuals to employ counter-measures and perhaps circumvent the test.) Indeed, "'[t]here is no principle . . . that requires an agency to release all details concerning [its] techniques simply because some aspects of them are known to the public[.]'" Muslim Advocates v. DOJ, 833 F. Supp. 2d 92, 104–05 (D.D.C. 2011) (quoting Barnard v. DHS, 598 F. Supp. 2d 1, 23 (D.D.C. 2009)).

### c. Endangering the Life or Safety of Any Individual, 5 U.S.C. § 552(b)(7)(F).

For redactions under 5 U.S.C. § 552(b)(7)(F), Plaintiff's sole argument is that he has not physically harmed certain people, and therefore it is "ludicrous and frankly offensive" that the Secret Service would be concerned about Plaintiff harming individuals identified in the records as cooperating with the Secret Service.[4] (Doc. 41 at 4.)

In its opening brief and supporting declarations the Secret Service explained why it is concerned that revealing the names and identifying information of people appearing in the Secret Service's records creates a risk of harm. (Doc. 28 (Ex Parte Decl.) ¶¶ 99, 103, 110-112.) Courts generally afford agency declarations "substantial weight" if they

---

[4] Plaintiff admits the Secret Service did not withhold any material on the basis of § 552(b)(7)(F) alone. For redactions the Secret Service made pursuant to Exemption (b)(7)(F), it also redacted the same information pursuant to at least Exemptions (b)(6) and (b)(7)(C), and often other Exemptions. (See, e.g., Doc. 26-10 at 2–4, 6–7, 9–11.) Plaintiff has not objected to the Secret Service's redactions under Exemptions (b)(6) and (b)(7)(C). The Court does not even need to reach the issue of applicability of Exemption (b)(7)(F).

are "relatively detailed and non-conclusory," and if they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Manning v. DOJ, 234 F. Supp. 3d 26, 32 (D.D.C. 2017).  Plaintiff has not established a basis for not affording "substantial weight" to the Secret Service's judgments here regarding possible harm to individuals.

## II.     The Secret Service Properly Withheld Plaintiff's Post-Conviction Records Under FOIA Exemption (b)(7)(A).

With respect to Exemption (b)(7)(A), Plaintiff's only argument is that he does not agree with the Fifth Circuit's oft-cited holding in Moorefield v. U.S. Secret Serv., 611 F.2d 1021, 1026 (5th Cir. 1980).  (Doc. 41 at 5.)  In Moorefield the Fifth Circuit rejected precisely the argument Plaintiff presents here—that without a contemplated criminal prosecution, Exemption (b)(7)(A) cannot apply.

There, Moorefield, "twice convicted for threatening the life of the President of the United States," brought a FOIA case to obtain his file from the Secret Service.  Id. at 1022.  Moorefield argued the Secret Service could not invoke Exemption (b)(7)(A) to protect its records related to an active protective investigation of Moorefield, because Moorefield was not then "suspected of criminal activity within the Service's jurisdiction."  Id. at 1024–25.[5]  Moorefield argued he was only "of interest to the Service

---

[5] In a supporting affidavit, the Deputy Director of the Secret Service stated "Moorefield is of active interest to the United States Secret Service.  His file is considered by the Secret Service to be an active case.  The direction of interest shown by Mr. Moorefield

because his prior history of making threats against the President makes him an ongoing danger to a protectee of the Service." Id. at 1024.  Moorefield argued "[r]ecords of such an investigation could never meet the 7(A) exemption" because without a contemplated prosecution, "there is no enforcement proceeding to be interfered with."  Id.

The Fifth Circuit disagreed, noting that while the "purpose and point" of an investigation generally expires once an adjudicatory proceeding is held, Moorefield's case showed "an exception to this rule."  Id. at 1025.

> In discharging its responsibility to protect the President, the Secret Service does not conduct its routine investigations with a view towards apprehending law-breakers and bringing them to justice.  Thus, if the Service has succeeded in its prophylactic mission, it should never appear in an adjudicatory proceeding to prosecute the assailant of a President, or any of its other protectees.  Its job is to Prevent an attack from ever being made.  In the views of Senator Hart, who introduced the 1974 exemption amendment (including section 7(A)), "enforcement proceedings" correspond with "law enforcement purposes," and such purposes include the prevention as well as the detection and punishment of violations of the law. . . . Notwithstanding that Service investigations are not directed toward trials or hearings, they are certainly directed toward an active and concrete effort to enforce the law in fact, nothing could be more "active and concrete" than activities that are part of the security apparatus that surrounds the President of the United States.

Id. at 1025.

toward Secret Service protectees has required that in-depth investigations be conducted by the Secret Service including interviews with Mr. Moorefield. . . . These and future investigations would be seriously hampered by the disclosure to Mr. Moorefield of information from the files of the Secret Service pertaining to him.  Mr. Moorefield would not only learn what criteria the Secret Service uses in conducting a protective investigation, he would be able to avoid in the future certain aspects of investigations pertaining to him if he were to become aware of the various efforts made by the Secret Service to investigate him.  Disclosure of information to those individuals which are being actively investigated would allow that information to be utilized to hamper and avoid further investigations."  Moorefield, 611 F.2d at 1025.

The court concluded "the Service's activities in investigating and observing persons who present threats to Service protectees are enforcement proceedings for the purposes of the FOIA." Id. at 1026. See also Milner v. Dep't of the Navy, 562 U.S. 562, 583 (2011) (Alito, J., concurring) ("[t]here can be no doubt. . . that the Secret Service acts with a law enforcement purpose when it protects federal officials from attack."). The Court should follow the Fifth Circuit's well-reasoned opinion in Moorefield, and hold that the Secret Service properly withheld documents from Plaintiff under Exemption (b)(7)(A).[6]

## CONCLUSION

The Secret Service has complied with its obligations under the FOIA, 5 U.S.C. § 552, and is entitled to summary judgment as a matter of law.

Dated:  August 28, 2019           DREW H. WRIGLEY
                                  United States Attorney

                         By:      /s/ James Patrick Thomas
                                  JAMES PATRICK THOMAS
                                  Assistant United States Attorney
                                  ND Bar Board ID No. 06014
                                  P.O. Box 699
                                  Bismarck, ND  58502-0699
                                  (701) 530-2420
                                  james.p.thomas@usdoj.gov
                                  Attorney for United States Secret Service

---

[6] As noted in the Secret Service's opening brief, in the event the Court finds Exemption (b)(7)(A) inapplicable, several other FOIA Exemptions also protect the records from full disclosure. These FOIA Exemptions include 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).  If the Court finds FOIA Exemption (b)(7)(A) inapplicable, the Secret Service requests the Court permit the Secret Service to withhold and redact the post-conviction records in accordance with the aforementioned Exemptions.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2019, the foregoing document was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF).

I further certify that a copy of this document was sent via first-class mail, postage paid, to non-ECF participant:

Daniel Edward Cvijanovich
2433 20th Ave. S., Apt. 305
Fargo, ND 58103

Dated:  August 28, 2019

*/s/ James Patrick Thomas*
JAMES PATRICK THOMAS
Assistant United States Attorney