# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Daniel Cvijanovich, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:18-cv-220 |
| vs. ) | |
| ) | **ORDER** |
| United States Secret Service, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Daniel Cvijanovich brings this suit against the United States Secret Service pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking records concerning himself. (Doc. 1). The Secret Service moves for summary judgment, asserting records it has not yet disclosed are exempt under FOIA. (Doc. 24).

## Background

The Freedom of Information Act was passed to allow public access to federal government documents and records. 15 Federal Procedure, Lawyers Edition § 38:1 (2019). Under FOIA, federal agencies must release any properly requested information unless a FOIA exemption applies. Id. The statute requires agencies to designate and publish contact information for officers to whom the public may direct requests for information. Id. § 38:609. Generally, agencies must establish detailed criteria that their Freedom of Information Officers are to follow, id. § 38:319, and they must allow administrative review of any denial of an information request, id. § 38:352.

The Secret Service is a federal agency charged with protecting the President and Vice President of the United States, their families, and other designated protectees. (See Doc. 26, p. 7; 18 U.S.C. § 3056). The Secret Service began investigating Cvijanovich in March 2006 after an anonymous post to a Federal Bureau of Investigation website

claimed Cvijanovich wanted to assassinate then-President George W. Bush. (Doc. 26, p. 9). That posting also claimed Cvijanovich was responsible for damage to a post office building in 2001. In connection with the post office incident, an indictment charged Cvijanovich with damage to government property, threatening to assault a federal official, and mailing threatening communications. Id. at 10. In 2006, Cvijanovich pleaded guilty to those charges and was sentenced to a prison term followed by supervised release. (Dkt. 3:06-cr-44, 16; Dkt. 3:06-cr-44, 24). In 2007, a federal grand jury indicted Cvijanovich on three counts of making threats against the President. Cvijanovich v. United States, No. 3:07-CR-55, 2011 WL 2680485, at *1 (D.N.D. July 8, 2011). Later that same year, Cvijanovich was convicted of one of the three counts and sentenced to another prison term. Id. In July 2011, because of a matter involving credibility of a key government witness, the district judge vacated the 2007 conviction, id. at 11, and the indictment was dismissed without re-trial, (Dkt. 3:07-cr-55, 187).

According to the Secret Service, because of Cvijanovich's past actions and mental evaluations, the agency continues to monitor Cvijanovich "to ensure that one of its protectees is not harmed by [him]," (Doc. 26, p. 11), and he is a subject of an active protective intelligence investigation, (Doc. 25, p. 1). The details of that investigation are described in a declaration of William J. Callahan, Deputy Director of the Secret Service. (Doc. 26).

On December 1, 2017, Cvijanovich requested "copies of all records pertain[ing] to [himself] which are in the possession of the United States Secret Service." (Doc. 1-2). The Secret Service conducted a search of its Field Investigative Reporting System, "the Secret Service's central index for records related to new or existing cases and investigations of crimes." (Doc. 25, pp. 6-7). That search led to records relating to

2

Cvijanovich in the Protective Threat Management System, which holds "records related to individual actors' threatening behavior or incidents that may impact the Secret Service's mission," and the Significant Case Database, an "application that allows users to search for, create, and modify criminal investigative files." (Id.; Doc. 26, pp. 2-3). On April 9, 2018, the Secret Service responded to Cvijanovich's request, stating it had the records he requested but those records were exempt from disclosure under 5 U.S.C. § 552(b)(7)(A). (Doc. 26, p. 3).

On June 4, 2018, Cvijanovich administratively appealed. (Doc. 1-4). The Secret Service responded on July 31, 2018, reaffirming the records would be "withheld under 5 U.S.C. § 552(b)(7)(A) as release of [that] information could interfere with an ongoing enforcement proceeding." (Doc. 1-5). Cvijanovich challenged that determination and filed in this court on October 30, 2018.

After the present suit commenced, the Secret Service referred certain records created prior to Cvijanovich's 2007 conviction for review by the FBI and the Federal Bureau of Prisons (BOP). (Doc. 26-6; Doc. 26-7; Doc. 26-8). On May 2, 2019, the Secret Service released over seven hundred pages of other redacted documents, with references to seven specific exemptions claimed for those redactions, to Cvijanovich. (Doc. 27). The Secret Service also provided a Vaughn index[1] annotating its reasons for asserting each exemption. (Doc. 26-10). After the Secret Service released the 700+ pages to Cvijanovich, the FBI and BOP responded to the Secret Service's referral by indicating some documents were entirely exempt, some documents should be partially redacted,

---

[1] A Vaughn index is to include materials supporting the adequacy of a government agency's search for responsive materials along with separate, specific, and adequate bases for claiming exemptions under FOIA. Vaughn v. Rosen, 484 F.2d 820 (D.D.C. 1973).

and some documents were non-exempt. (Doc. 32; Doc. 32-1; Doc. 32-2; Doc. 39; Doc. 39-1; Doc. 39-2). The non-exempt and partially redacted documents were released to Cvijanovich. As to documents created after Cvijanovich's 2007 conviction, the Secret Service released court documents and news articles but withheld reports and mental health information which were responsive to Cvijanovich's request. (Doc. 26, p. 12).

In an affidavit describing his interactions with the Secret Service since 2010, Cvijanovich asserts Callahan's description of his history with the Secret Service is misleading and designed to make disclosure of the requested documents appear riskier than it actually is. (Doc. 41, p. 1).

## Standard of Review

Under FOIA, federal agencies must "make Government records available to the public, subject to nine exemptions for specific categories of material." Milner v. Dep't of Navy, 562 U.S. 562, 564 (2011). Congress intended FOIA to apply broadly: "[FOIA] seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." John Doe Agency v. John Doe Corp., 493 U.S. 146, 151 (1989) (internal quotation marks omitted); see also Milner, 562 U.S. at 565. "[A]lthough FOIA strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." August v. FBI, 328 F.3d 697, 699 (D.C. Cir. 2003) (internal quotation marks omitted).

Most FOIA cases are properly resolved on summary judgment. Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011); Nielsen v. U.S.

Bureau of Land Mgmt., 252 F.R.D. 499, 503 (D. Minn. 2008). The standard for summary judgment motions in FOIA cases in the Eighth Circuit is well-developed:

> [The court reviews] whether the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Miller v. United States Dep't of State, 779 F.2d 1378, 1382 (8th Cir.1985). To defeat a motion for summary judgment, the nonmoving party "need only present evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Miller v. USDA, 13 F.3d 260, 262 (8th Cir. 1993).

The burden of proof in FOIA cases rests on the agency claiming exemptions: "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" DOJ v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). As another district court in this circuit recently explained:

> A District Court may grant summary judgment for the government based solely on the information provided in affidavits or declarations when the affidavits or declarations describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

Bush v. USDA, No. 16-CV-4128, 2017 WL 3568672, at *2 (N.D. Iowa Aug. 17, 2017), aff'd sub nom. Bush v. Risk Mgmt. Agency, USDA/RMA, 728 F. App'x 607 (8th Cir. 2018), cert. denied sub nom. Bush v. USDA, Risk Mgmt. Agency, 139 S. Ct. 1200 (2019) (internal citations and quotation marks omitted).

**Discussion**

As an initial matter, the court notes Cvijanovich does not question the adequacy of the Secret Service's search for the requested documents. As the Eighth Circuit stated, "the search need only be reasonable, it does not have to be exhaustive." Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985). After review of the Secret Service's submitted records and declarations, the court finds its search was reasonable. (See Doc. 42, p. 2 n.2).

Nor does Cvijanovich challenge the Secret Service's claimed exemptions under 5 U.S.C. §§ 552(b)(3) (grand jury information), (b)(6) (personnel, medical, and similar files), (b)(7)(C) (invasion of personal privacy), and (b)(7)(D) (confidential source identities), or its segregation and disclosure of non-exempt, pre-conviction information. (See Doc. 42, p. 2 n.2). The court discusses each of the other claimed exemptions below.

Cvijanovich asks that the court conduct an in-camera review of the documents over which the Secret Service asserts FOIA exemptions. The Eighth Circuit has held that in-camera review "should be limited, for it is contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence produced openly in court." Peltier v. FBI, 563 F.3d 754, 759 (8th Cir. 2009) (internal quotation marks omitted). The court is to use in-camera examination of exempted records primarily "as an aid in determining whether the government's affidavits are accurate and made in good faith." Id. Here, the court has conducted in-camera review of an ex parte declaration by Callahan, (see Doc. 28), and is satisfied with its accuracy. Cvijanovich has not suggested the Secret Service's claims are not made in good faith.

1. **Exemption (b)(5): Attorney-Client, Work Product, and Deliberative Process**

FOIA Exemption (b)(5) applies to:

> inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested.

5 U.S.C. § 552(b)(5). "Exemption [(b)(5)] was intended to allow an agency to withhold intra-agency memoranda which would not be routinely disclosed to a private party through the discovery process in litigation with the agency." United States v. Weber Aircraft Corp., 465 U.S. 792, 799-800 (1984). "Exemption [(b)(5)] covers records that would be normally privileged in the civil discovery context. The exemption allows the government to withhold records from FOIA disclosure under at least three privileges: the deliberative-process privilege, the attorney-client privilege, and the attorney work-product privilege." Nat'l Ass'n of Criminal Def. Lawyers v. DOJ Exec. Office for U.S. Att'ys, 844 F.3d 246, 249 (D.C. Cir. 2016) (internal citation omitted).

Citing Weber, 465 U.S. at 799-800, Cvijanovich argues the Secret Service cannot apply Exemption (b)(5) to records of a "criminal prosecution that is long complete or to a once-contemplated prosecution that is no longer permitted," asserting the exemption applies only to deliberation and communication in anticipation of civil litigation. (Doc. 41, pp. 1-2). The Secret Service argues Weber uses the framework of civil litigation to describe the types of protected information rather than holding information must have been prepared in connection with civil litigation in order to be exempted. The court agrees with this interpretation.

Exemption (b)(5) applies to law enforcement agency "records includ[ing] research and analysis, as well as recommendations about possible courses of action, created in preparation for criminal prosecution." Ellis v. DOJ, 110 F. Supp. 3d 99, 109 (D.D.C. 2015) (collecting cases). The District of Columbia trial court affirmed

7

application of the exemption in the specific context of Secret Service investigatory records: "[T]he opinions and evaluations of Special Agents concerning the plaintiff's and other parties' level[s] of threat to Secret Service protectees that were made prior to the initiation of any criminal proceedings . . . fall within Exemption [(b)(5)]'s deliberative-process protection." Dorsett v. U.S. Dep't of Treasury, 307 F. Supp. 2d 28, 37-38 (D.D.C. 2004).

Cvijanovich also argues Exemption (b)(5) "never applies to criminal or prosecutorial attorney-client privilege, work product, or deliberative process, unless there is a pending or at least possible prosecution." (Doc. 41, p. 2). However, as the Secret Service points out, the Supreme Court has held Exemption (b)(5) applies regardless of the pendency of litigation: "under Exemption (b)(5), attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." FTC v. Grolier Inc., 462 U.S. 19, 28 (1983).

Lastly, Cvijanovich argues documents discoverable in previous criminal proceedings are not subject to Exemption (b)(5). (Doc. 41, p. 2). As examples of alleged over-exemption by the Secret Service, he points to documents that might have been discoverable, such as a letter from Secret Service personnel to the United States Attorney for this district, (Doc. 27-3, pp. 24-34) or that were previously disclosed to him, such as his own psychiatric records, (Doc. 27-2, pp. 101-120; see Doc. 41-1, p. 2). The Supreme Court has held that a document may be exempted from disclosure under FOIA even if it was discoverable in previous litigation. Grolier, 462 U.S. at 28. Moreover, the distinction between criminal and civil proceedings is significant: "[D]isclosure in criminal trials is based on different legal standards than disclosure under FOIA, which turns on whether a document would usually be discoverable in a

8

civil case. Similar documents, in other words, are not—indeed must not be—treated similarly in the two different types of proceedings." Williams & Connolly v. SEC, 662 F.3d 1240, 1245 (D.C. Cir. 2011). As the court in Williams & Connolly further explained, "FOIA is neither a substitute for criminal discovery nor an appropriate means to vindicate discovery abuses." Id. (internal citations omitted). Thus, even if Cvijanovich might have received or did receive documents via discovery in a previous criminal proceeding, FOIA does not mandate their disclosure because the two processes are based on different rationales. See Pike v. DOJ, 306 F. Supp. 3d 400, 410 (D.D.C. 2016). ("A party who is seeking disclosure of previously released information [under FOIA] is entitled to receive no more than what is publicly available." (emphasis added)).

The court finds the Secret Service has demonstrated the records it has identified logically fall within Exemption (b)(5). See Bush, 2017 WL 3568672, at *2.

### 2. Exemption (b)(7)(E): Sensitive Law-Enforcement Techniques and Guidelines

Exemption (b)(7)(E) applies to:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). To meet Exemption (b)(7)(E), an agency must first demonstrate the records were "compiled for law enforcement purposes." Id.; see Kuehnert v. FBI, 620 F.2d 662, 666-67 (8th Cir. 1980) ("Because the documents here in issue comprise investigatory records of a criminal law enforcement agency, we hold that they meet exemption [(b)(7)]'s threshold requirement of having been 'compiled for law enforcement purposes.'"). Cvijanovich does not assert the records at issue do not meet

9

this requirement, and it is clear to the court from the Callahan declaration and exhibits that the records pass this threshold. (See Doc. 27; Doc. 27-1 to -4; Doc. 28).

Cvijanovich asserts the records he seeks apply only to himself and argues the "Secret Service has not explained how any of these files could be used by the plaintiff or anyone else to reconstruct techniques with any specificity or in any way that would hamper the Secret Service's efforts." (Doc. 41, p. 3). He points to the public dissemination of the agency's Exceptional Case Study Project and papers based on that study. Id. The Secret Service argues the documents to which Cvijanovich refers are over twenty years old and the Service's law enforcement techniques have changed over time. (Doc. 42, p. 6).

The Secret Service argues "[t]here is no principle . . . that requires an agency to release all details concerning [its] techniques simply because some aspects of them are known to the public." Barnard v. Dep't of Homeland Sec., 598 F. Supp. 2d 1, 23 (D.D.C. 2009). However, "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." Muslim Advocates v. DOJ, 833 F. Supp. 2d 92, 105 (D.D.C. 2011). A plaintiff bears the burden to show "specific information in the public domain that appears to duplicate that being withheld." Id. at 102. The Exceptional Case Study to which Cvijanovich refers is a research report published in January of 2000; it is preceded by a disclaimer: "The findings, conclusions, and opinions expressed in this document are those of the authors and do not necessarily reflect the official position or policies of the U.S. Department of Justice or the U.S. Department of the Treasury." Robert A. Fein and Bryan Vossekuil, Protective Intelligence and Threat Assessment Investigations (U.S. DOJ January 2000), www.ncjrs.gov/pdffiles1/nij/179981.pdf. While this document fulfills the "permanent

public record" aspect of the public domain doctrine, see <u>Dubuque v. U.S. Dep't of the Air Force</u>, No. 4:16 CV 1244, 2017 WL 5132666, at *5 (E.D. Mo. Nov. 6, 2017), it is not a duplicate of the information Cvijanovich seeks from the Secret Service. In the context of Exemption (b)(7)(E), the court concludes the public domain doctrine does not apply to records of a specific individual unless those identical records are reproduced in a permanent, public way.

The Secret Service further argues that disclosure of the documents over which it claims a (b)(7)(E) exemption would reveal "how Secret Service protective measures and techniques are applied in practice." (Doc. 42, p. 6). Another federal trial court recently held, "The purpose of Exemption [(b)(7)(E)] is to prevent the public from learning about the <u>existence</u> of confidential law enforcement techniques, not to prevent it from learning about the use of already-disclosed law enforcement techniques." <u>Shapiro v. DOJ</u>, 153 F. Supp. 3d 253, 273 (D.D.C. 2016) (emphasis added). It is not unreasonable to expect that a member of the public could extrapolate substantial information about the Secret Service's confidential techniques and protective measures from Cvijanovich's recent records. (<u>See</u> Doc. 26, pp. 18-19). Given the intention of the exemption, as stated in <u>Shapiro</u>, the Secret Service has demonstrated the records at issue logically fall within Exemption (b)(7)(E). <u>See</u> <u>Bush</u>, 2017 WL 3568672, at *2.

**3.     Exemption (b)(7)(F): Danger to Life or Safety of an Individual**

Exemption (b)(7)(F) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

11

Cvijanovich argues he has "long been aware of the identities" of the agent, inmates, and person who brought him to the Secret Service's attention in 2006 and states he "has never assaulted, threatened, or otherwise attempted to retaliate against any of these people, and he has no recent history of arrest for any crime." (Doc. 41, p. 4). Cvijanovich argues "the idea that [he] might now choose to attack some new person over some comparatively minor cooperation with the Secret Service is ludicrous and frankly offensive." Id. He asserts the FBI does not agree with the Secret Service's asserted (b)(7)(F) exemption as to certain records, but he does not explain how any difference in exemptions identified by the two agencies should influence the court's decision. (See Doc. 32-2, p. 2)

In support of the claimed (b)(7)(F) exemption, the ex parte Callahan declaration detailed several concerns for the life and safety of individuals. (Doc. 28, pp. 13-16). Agency affidavits receive substantial weight if they include more than barren assertions that a document is exempt. Madel v. DOJ, 784 F.3d 448, 452 (8th Cir. 2015); see also Dubuque, 2017 WL 5132666, at *4 ("An agency may use affidavits to explain why an exemption applies, which courts will accept as credible in the absence of bad faith."). The court agrees with the Secret Service's assessment; moreover, Cvijanovich's personal knowledge or prior access to the records is not a cognizable counter to a FOIA exemption. Cvijanovich has not provided evidence of bad faith on the part of the Secret Service, and its affidavits are "relatively detailed and non-conclusory," with sufficient justification for non-disclosure. See Manning v. DOJ, 243 F. Supp. 3d 26, 31 (D.D.C. 2017). Thus, the Secret Service demonstrated the records at issue logically fall within Exemption (b)(7)(F). See Bush, 2017 WL 3568672, at *2.

## 4. Exemption (b)(7)(A): Records Related to a Law Enforcement Proceeding with Potential to Harm that Proceeding Upon Release

FOIA exemption (b)(7)(A) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

An agency must show two elements supporting application of Exemption (b)(7)(A): (1) a pending or prospective law enforcement proceeding, and (2) some articulable harm expected to be caused by disclosure of the information. Ameren Mo. v. EPA, 897 F. Supp. 2d 802, 810-12 (E.D. Mo. 2012). The Eighth Circuit has described a primary purpose behind the exemption as preventing harm to an agency's case by blocking "earlier or greater access to agency investigatory files than [plaintiffs] would otherwise have." Barney v. IRS, 618 F.2d 1268, 1273 (8th Cir. 1980) (internal quotation marks omitted). Articulable harm may include advance access to the government's case, witness tampering, destruction of evidence, or creation of false alibis. Ameren, 897 F. Supp. 2d at 810-811. "Under exemption [(b)(7)(A),] the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." Barney, 618 F.2d at 1273. Though courts are to "give deference to an agency's predictive judgment of the harm that will result from disclosure of information, it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate *how* disclosure will do so." Citizens for Responsibility & Ethics in Wash. v. DOJ, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (internal citation and quotation marks omitted). The Fifth Circuit's decision in Moorefield v. U.S. Secret Service, 611 F.2d 1021 (5th Cir. 1980), is especially instructive: Moorefield was twice convicted of threatening

13

to kill the president and brought a FOIA case to obtain records of the Secret Service's investigation, but the court found his records "sensitive; all constitute investigative matter that assists the [Secret] Service in its efforts to keep track of Moorefield and preclude his harming a [Secret] Service protectee." Moorefield, 611 F.2d at 1026. The Fifth Circuit distinguished the work of the Secret Service from that of other law enforcement agencies because it "does not conduct its routine investigations with a view towards apprehending law-breakers and bringing them to justice. . . . Its job is to [p]revent an attack from ever being made." Id. at 1025.

Cvijanovich argues exemption (b)(7)(A) cannot apply because "no criminal, administrative, or other adjudicatory proceeding is pending or contemplated." (Doc. 41, p. 5). However, the Callahan declaration states Cvijanovich remains the subject of an active Secret Service investigation, (Doc. 26 pp. 9, 11-12), fulfilling the first element of the exemption. That declaration also states two categories of documents—reports and mental health records—are exempted along with some open source documents. Id. at 12-13. The declaration explains that disclosure of reports "would severely jeopardize the investigation by providing Cvijanovich with the ability to elude detection or suppress or fabricate information" and that disclosure of mental health records would "impact the Secret Service's ability to continue to assess the risk he poses as [Cvijanovich] would be able to circumvent [the Secret Service's] techniques and/or intentionally deceive." Id. at 13-14. The ex parte Callahan declaration includes sufficiently detailed articulable harm supporting exemption of the stated open source records. (Doc. 28, p. 21). Thus, the

Secret Service demonstrated the records at issue logically fall within Exemption (b)(7)(A).[2] See Bush, 2017 WL 3568672, at *2

## Conclusion

The Secret Service has demonstrated the records at issue logically fall within FOIA exemptions (b)(5) (work product and deliberative process), (b)(7)(E) (sensitive law enforcement techniques), (b)(7)(F) (danger to life or safety of any individual), and (b)(7)(A) (potential harm to pending law enforcement proceeding). See 5 U.S.C. § 552; Bush, 2017 WL 3568672, at *2. Cvijanovich does not challenge the Secret Service's claimed exemptions under (b)(3) (grand jury information), (b)(6) (personnel, medical, and similar files), (b)(7)(C) (invasion of personal privacy), or (b)(7)(D) (confidential source identities). Although the Eighth Circuit has held "[o]nly one exemption is necessary for redaction [under FOIA]," Hulstein v. DEA, 671 F.3d 690, 695 n.2 (8th Cir. 2012), the court finds the Secret Service met the requirements of all claimed FOIA exemptions and need not disclose any further records. The Secret Service's motion for summary judgment, (Doc. 24), is **GRANTED**.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY**.

Dated this 25th day of September, 2019.

/s/ *Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

---

[2] The Secret Service acknowledges that exemption (b)(7)(A) will no longer apply when the pending investigation of Cvijanovich concludes, though it asserts other FOIA exemptions may continue to apply. (Doc. 26, p. 14).